IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lamont Cutner, #185864,<br><br>                              Plaintiff,<br><br>     vs.<br><br>Sgt. Joey Tutt,<br><br>                              Defendant. | Civil Action No. 6:12-cv-760-GRA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment (doc. 27). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff is an inmate of the South Carolina Department of Corrections ("SCDC") and was housed at SCDC's McCormick Correctional Institution ("MCI") in 2011. The defendant Joey Tutt is a Sergeant and Contraband Officer at MCI. In his complaint, the plaintiff alleges that Sgt. Tutt punched and kicked him during an incident in July 2011, thereby violating his right to be free from excessive force as guaranteed by the Eighth Amendment to the United States Constitution.

On June 15, 2012, the defendant filed a motion for summary judgment. By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his

response in opposition to the defendant's motion on July 2, 2012. The defendant filed a reply on July 12, 2012.

## **FACTS PRESENTED**

On July 26, 2011, Sgt. Tutt and other officers prepared to search the plaintiff's cell in the Special Management Unit of MCI. In his complaint, the plaintiff alleges that he complied with the officers' instructions to back up to the door and be handcuffed. The officers then entered his cell, and Sgt. Tutt allegedly threw the plaintiff on the bed and punched him in the back three times, then threw him on the floor and kicked him in the neck. The plaintiff claims he then ran out of the cell to a "rock area" where other officers put him in leg irons. He was then escorted to the "rec. field area" where he was seen by a nurse, before being taken to the medical unit. He alleges he was given medication for neck pain and that x-rays showed that "something was wrong" with his neck (comp. pp. 2-4).

Sgt. Tutt describes the July 26th incident much differently and denies punching or kicking the plaintiff. According to Sgt. Tutt, he ordered the plaintiff and his cellmate to turn and be handcuffed at the door. The cellmate complied, but the plaintiff refused, and instead flushed what appeared to be a cell phone down the toilet. After he finally came to the door and was handcuffed, the plaintiff became belligerent when Sgt. Tutt entered the cell and attempted to frisk him. The plaintiff was escorted out of the cell and was maced by another officer after spitting in the officer's face (Tutt aff. ¶¶ 7 - 17). With his motion for summary judgment, Sgt. Tutt provides MCI's medical records for the plaintiff in which the nurse reported that the plaintiff claimed he was "hit in the face" and "kicked in the chest and side," but noting no injuries except for a "small, superficial abrasion" on his lower right leg (doc. 27-4, encounters 588-589). Also provided are findings by a doctor that the plaintiff's subsequent x-rays were normal (doc. 27-6).

2

In response to Sgt. Tutt's motion for summary judgment, the plaintiff filed his own declaration that altered the facts alleged in his complaint. Instead of being kicked while in his cell as he initially claimed, the plaintiff declared: "Someone tripped me up as I was walking toward the stairs. I fell, that's when Sgt. Tutt started kicking me . . ." (pl. decl. ¶ 5). He also provided a declaration of another inmate, James Darnell Scott, who likewise declared that the plaintiff was kicked after being removed from the cell (Scott decl. ¶ 5).[1]

The plaintiff was charged with and convicted of three violations of SCDC policy as a result of this incident, including possession of contraband, disobeying officers, and threatening SCDC employees (doc. 27-3).

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

---

[1] Pursuant to 28 U.S.C. § 1746, any matter that can be shown by sworn affidavit may similarly be shown by unsworn declaration made under penalty of perjury in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746. Here, while they were not notarized, both the plaintiff's and Scott's declarations were made under penalty of perjury. *See Uncle Henry's Inc. v. Plaut Consulting Inc.*, 240 F.Supp2d 63, 69 (D. Me. 2003) (noting that affidavits need not be notarized to be cognizable on summary judgment so long as they are made under penalties of perjury in accordance with 28 U.S.C. § 1746).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Excessive Force***

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298-304 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the United States Supreme Court held that whether the prison disturbance is a riot or a lesser disruption, corrections officers are required to balance the need to restore discipline through the use of force against the risk of injury to inmates. The Court held that "whenever prison officials stand accused of using excessive physical force in violation of

4

the Cruel and Unusual Punishments Clause, the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7.

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of a forceful response, and (5) the absence of serious injury. *Williams*, 77 F.3d at 762 (citing *Hudson*, 503 U.S. at 7). In *Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010), the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. *Id.* at 1177-78 (citing *Hudson*, 503 U.S. at 4). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 1178 (quoting *Hudson*, 503 U.S. at 7).

The court finds that the record, taken as a whole, could not lead a rational trier of fact to find for the plaintiff on his claim of excessive force. In his complaint, the plaintiff alleges that while in his cell, Sgt. Tutt "punch me in back 3 times plus kick me neck [sic]" (comp. p. 2, ¶ II.B). However, the plaintiff told the nurse that he was "hit in the face, kicked in the chest and side" (doc. 27-4, encounter 589). This obvious inconsistency aside, the medical records show no injury to any of the areas mentioned by the plaintiff in either account. Those records show that the plaintiff saw a nurse immediately after the incident and that he had "no apparent injury noted, no bleeding/abrasions/bruising," except for a "small, superficial abrasion" on his right leg (doc. 27-4, encounters 588-589). His later

5

complaint of neck pain resulted in an x-ray examination, the results of which were also normal: "Soft tissues are normal. Vertebral bodies demonstrate normal alignment with normal intervertebral disc spaces also present. There is no evidence of fracture, destructive change or congenital abnormality" (doc. 27-6). While the plaintiff contends that the x-rays revealed "something was wrong," he fails to demonstrate that contention, and he certainly has not shown that his purported neck problem is attributable to the defendant.

Notably, both the plaintiff's and Inmate Scott's declarations alter the facts as the plaintiff initially alleged them to be in his complaint. In his complaint, the plaintiff alleged that he was assaulted by the defendant in his cell. He claims the defendant "slung [him] off the bed to the floor and kick [him] in the back of kneck [sic]. That's when I got up and ran out of the room . . . " (comp. p. 3). The plaintiff did not mention being "gassed" in his complaint (*see generally* comp.). In their declarations, however, the plaintiff and Scott allege that the defendant followed the plaintiff out of his cell, caused him to fall, and then started kicking the plaintiff in view of Inmate Scott, after which another officer sprayed him with gas (pl. decl. ¶ 5; Scott decl. ¶ 5). *See Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir.2000) (citing cases for the proposition that "[p]laintiffs are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit").

Furthermore, both the plaintiff and Inmate Scott state in their declarations that the plaintiff was simply using the restroom when the defendant arrived at the plaintiff's cell to conduct the search on July 26, 2011 (pl. decl. ¶ 2; Scott decl. ¶ 2). The plaintiff further states that he was not flushing any contraband items when the defendant arrived at his cell (pl. decl. ¶ 2). The allegations of using the restroom to explain the flushing toilet were not made in the plaintiff's complaint. Further, the disciplinary hearing record of August 22,

2011, shows that the plaintiff admitted to having a contraband MP3 player when the defendant arrived to search his cell (doc. 27-3)

In any event, this court recognizes that while credibility determinations and the weighing of evidence are matters for the jury and not the court, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment should be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). Given the plaintiff's complete lack of evidence to support his claim, summary judgment is appropriate.

### *Qualified Immunity*

The defendant further argues that he is entitled to qualified immunity as his conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

7

The plaintiff has failed to show that the defendant violated any of his constitutional or statutory rights. Therefore, Sgt. Tutt is entitled to the protections afforded by the doctrine of qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 27) be granted.

Kevin F. McDonald
United States Magistrate Judge

August 30, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.